HARMEET K. DHILLON (SBN: 207872)
Harmeet@dhillonlaw.com
KRISTA L. BAUGHMAN, ESQ. (SBN: 264600)
kbaughman@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
Beta Soft Systems, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### San Francisco Division

| | |
|---|---|
| BETA SOFT SYSTEMS, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MODIS, INC., d/b/a MODIS IT, INC., a Florida corporation,<br><br>    Defendant. | Case Number: 3:14-cv-5169<br><br>**COMPLAINT FOR:**<br><br>  1. **Breach of Express Contract;**<br>  2. **Breach of Implied Contract;**<br>  3. **Quantum Meruit.**<br><br>**Jury Trial Demanded** |

Beta Soft Systems, Inc. ("Plaintiff" or "BSS"), by and through its attorneys, Dhillon Law Group Inc., files this Complaint against Modis, Inc., d/b/a Modis IT, Inc. ("Defendant" or "Modis") for breach of contract (express and implied) and quantum meruit, and alleges as follows:

**THE PARTIES**

1.  Plaintiff Beta Soft Systems, Inc. ("BSS") is a California corporation with its principal place of business in Alameda County, California.

2.  Upon information and belief, Defendant Modis Inc., d/b/a Modis IT, Inc. ("Modis") is a Florida corporation with its principal place of business in Jacksonville, Florida.



1

Complaint                                                                                                          Case No. 3:14-cv-5169

Modis does business in California as Modis IT, Inc., and has several offices in California.

3. BSS and Modis are collectively referred to as the "Parties."

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §1332(a), as there is complete diversity among BSS and Modis, and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Modis, because Modis has sufficient minimum contacts in California, and purposefully avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice. Upon information and belief, Modis has offices throughout California, including in San Francisco, San Jose, Foster City, and Walnut Creek. Modis is registered to do business in California.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia,* a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Civil Local Rules 3-2(d), this case should be assigned to the San Francisco division of this Court because a substantial part of the events or omissions which give rise to the claims alleged arose in this district.

## FACTUAL ALLEGATIONS

8. BSS is an information technology ("IT") staffing and consulting company headquartered in Fremont, California. BSS is a 20-million-dollar-revenue business that has hired over 350 employees in the domains of IT development and consulting.

9. Upon information and belief, Modis is a global provider of IT staffing services and is headquartered in Jacksonville, Florida, with over 60 office locations in the United States, Canada, and Europe.

10. Modis and BSS have a long-standing business relationship that dates back to 2005, when the Parties first began working together for the placement of consultants by BSS.



**The Parties Enter Into A Contract For Services**

11. In or around March, 2011, BSS and Modis agreed to form a business relationship, whereby BSS would provide IT referral services to Modis, in exchange for compensation by Modis. Specifically, BSS agreed to refer IT consultants to Modis, for Modis' use in placing those consultants at Modis' clients in California ("End Clients"). The Parties agreed that Modis would pay BSS a fee based on each hour worked by each referral consultant, and that the amount of the fee would be agreed upon by the Parties on an ongoing basis.

12. The amount of compensation that Modis owed BSS was agreed upon by the Parties on a regular and continuing basis, both through verbal communications and by email. During these communications, Modis would inform BSS of the number of hours a consultant had worked for an End Client in a billing period, and based upon those hours and the consultant's rate, the Parties would agree on the amount Modis owed to BSS. BSS would then send Modis an invoice memorializing this amount and requesting payment.

13. For example, by emails sent in May and July, 2012, Aparna Sreeraman of Modis confirmed the fees to be paid to BSS in connection with the work of five separate referral consultants, and these fees ranged from $9.50 per hour to $34 per hour.

14. Periodically, BSS would inform Modis that a consultant's rate was being increased, and Modis would process this change with the End Client and inform BSS of the date on which the rate increase had gone into effect.

15. On some occasions, when Modis failed to timely inform BSS of the number of hours of work completed by a consultant during a billing period, BSS would send Modis an invoice that reflected a standard 40-hour work week per consultant, which represented BSS's best estimate of the actual hours worked by the consultant. On these occasions, BSS expressly invited Modis to make any necessary revisions to the "hours worked" portion of the invoice, and agreed to work with Modis to calculate the proper compensation owing, based on the revised numbers.

16. For instance, in light of Modis' failure to timely inform BSS of the actual hours worked by consultants in the months of August, November, and December, 2012, BSS sent



Modis invoices that estimated a 40-hour work week. However, once Modis responded to those invoices by providing the actual amount of hours worked, BSS promptly revised the invoices and adjusted the amount of compensation owed to BSS, accordingly. Modis acknowledged this revision and re-invoicing process in emails sent in December, 2012.

17. Other than on the occasions described above, Modis never disputed any BSS invoice, nor indicated that it would not pay any invoice in full, until November, 2013.

18. In fact, Modis made several payments to BSS for services rendered in 2011 and 2012, although the invoices for those years were never paid in full.

**Modis Breaches the Contract and Refuses to Compensate BSS for Services Rendered**

19. On July 24, 2013, Modis Managing Director, Wyatt Hall, sent Vishal Mangla and Anupam Trivedi of BSS an email entitled "BetaSoft 2012 Audit payments due by Modis." In this email, Mr. Hall indicated that Modis had conducted a 2012 internal audit concerning referral fees outstanding to BSS (the "2012 Audit"). The 2012 Audit, which was attached to Mr. Hall's email, referred only to BSS invoices from August 2012 and onward, and made no mention of the outstanding invoices for 2011 and/or the first half of 2012. In the email, Mr. Hall asked BSS to invoice Modis for $60,649.47.

20. In August and September 2013, BSS received payments from Modis totaling approximately $60,000. Despite these payments, there remained an outstanding balance of approximately $138,000 for services rendered in 2012, as well as $40,000 for services rendered in 2011.

21. On October 15 and 29, 2013, Mr. Trivedi of BSS emailed Aparna Sreeraman of Modis, asking when BSS could expect payment of the open invoices, and stressing that the payments had been substantially delayed.

22. On October 29, 2013, Mr. Trivedi emailed Mr. Hall and indicated that although Modis was almost current on invoices for August through December, 2012, there remained a large outstanding balance concerning open invoices for 2011, and for January through July of 2012. In response, Mr. Hall took the position that the amount of $60,649.47, as set forth in the 2012 Audit that Modis had unilaterally conducted, represented payment for *all* outstanding



1  referral fees owing to BSS.

2  23.  Mr. Trivedi promptly responded to Mr. Hall's email, clarifying that BSS had never accepted payment of $60,649.47 to clear all outstanding invoices, and noting that the 2012 Audit had only addressed invoices from August 2012 onward. Mr. Trivedi again requested that Modis clear all past invoices.

24.  On November 18, 2013, the Parties discussed by phone the open balance that Modis owed to BSS.

25.  On November 22, 2013, Mr. Hall emailed Mr. Mangla and acknowledged that Modis had been paying consultant referral fees to BSS "for the past few years." In response to BSS's contention that it was owed fees from 2011 and 2012, Mr. Hall stated "Modis' final position on this matter is that all outstanding payment issues were fully and finally resolved when Modis paid $60,647.47 earlier this year. Modis will not make any further payment to BetaSoft for alleged delinquent fees. Any further demands for payment by BetaSoft will not only meet vigorous resistance, they will negatively impact BetaSoft's business relationship with Modis."

26.  On December 2, 2013, after the Thanksgiving holiday, Mr. Trivedi responded to Mr. Hall's email to reiterate that BSS was entitled to fees for the entire referral period, not just from August 2012 onward. Mr. Trivedi stated that BSS remained willing to continue its pattern and practice of working with Modis to make any necessary revisions to the "hours worked" portion of the invoices and to adjust BSS' compensation accordingly.

27.  Modis refused to work with BSS to correct and/or make payment towards the outstanding invoices. Instead, by email on December 12, 2013, Mr. Hall proposed that the Parties enter into a Referral Agreement to memorialize in writing the existing terms of their ongoing business relationship. However, the Referral Agreement drafted by Modis and attached to the December 12, 2013 email required BSS to waive its right to collect all outstanding payments owed by Modis.

28.  In the December 12, 2013 email, Mr. Hall represented that if BSS did not promptly execute the Referral Agreement, then Modis would no longer pay fees for any existing



5

Complaint                                                                                                    Case No.  3:14-cv-5169

referrals beyond December 31, 2013, and that Modis would no longer conduct any business with BSS beyond December 31, 2013.

29. The Referral Agreement was never executed by the Parties.

30. In or around January 2014, Modis stopped doing business with BSS.

31. Upon information and belief, after ceasing all business with BSS, Modis hired a third party company, SCM Data Inc., to provide the same types of consultant referral services that BSS had previously been providing to Modis.

## FIRST CAUSE OF ACTION
### Breach of Contract

32. BSS incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

33. In or around March, 2011, BSS and Modis entered into a valid contract ("Contract") whereby BSS agreed to provide consultant referral services to Modis, and as compensation for these services, Modis agreed to pay BSS fees based upon the consultant's billing rate and the hours worked.

34. BSS performed under the Contract by providing consultant referral services to Modis from approximately March, 2011 through August, 2013.

35. On numerous occasions in writing, Modis reaffirmed its contractual obligation to compensate BSS for services rendered, and also confirmed the amount of those payments.

36. On November 22, 2013, Modis informed BSS of Modis' intent to breach its contractual obligations to compensate BSS for services rendered. Modis has made it clear that it no longer intends to make any payment to BSS for outstanding amounts.

37. BSS has performed all obligations under the Contract, other than those obligations whose performance is excused by virtue of Modis' breach of the Contract.

38. Modis' breach has damaged BSS by depriving BSS of payment for services rendered.

39. As a direct result of Modis' conduct, BSS has suffered damages in the form of lost contractual benefits of approximately $178,000, plus interest.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**

40. BSS incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

41. In the alternative to an express contract, BSS pleads a cause of action for breach of implied-in-fact contract.

42. The conduct of BSS and Modis implied an obligation and intention by Modis to compensate BSS for services rendered from March, 2011 through August, 2013, and the expectation by BSS of compensation for these services.

43. Through verbal communications and by email, Modis reaffirmed its obligation to compensate BSS for services rendered, and also confirmed the amount of those payments.

44. Modis additionally ratified its contractual obligations by making payments on some invoices for services rendered in 2011 and 2012.

45. BSS performed the anticipated services for Modis from March 2011, through August, 2013, in the form of referring numerous IT consultants to Modis. Modis voluntarily accepted BSS's services, knowing that BSS expected compensation for these services.

46. On November 22, 2013, Modis informed BSS of Modis' intent to breach its contractual obligations to compensate BSS for services rendered. Modis has made it clear that it no longer intends to make any payment to BSS for outstanding amounts.

47. As a direct result of Modis' conduct, BSS has suffered damages in the form of the reasonable value of the services rendered, but unpaid, totaling approximately $178,000, plus interest, plus interest.

**THIRD CAUSE OF ACTION**
**Quantum Meruit**

48. BSS incorporates every allegation contained in the preceding paragraphs, as though set forth fully herein.

49. BSS has performed consultant referral services for Modis, at Modis' request, from approximately March, 2011 through August, 2013.



50. BSS has not been paid for the full amount of the consultant referral services rendered.

51. The reasonable value of the unpaid consultant referral services rendered is approximately $178,000.

52. As a direct result of Modis' conduct, BSS has been damaged in the amount of services rendered, but unpaid, estimated at this time to be $178,000, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, BSS prays for judgment against Modis as follows:

1. For judgment in favor of BSS and against Modis on all causes of action set forth herein;

2. For compensatory damages according to proof, estimated to exceed $178,000, including pre- and post-judgment interest as allowed by law;

3. For costs of suit incurred herein; and

4. For such further relief as the court considers proper.

## DEMAND FOR JURY TRIAL

Under Fed.R.Civ.P. 38(b), Beta Soft Systems, Inc. demands jury trial of all issues raised by the Complaint.

Date: November 21, 2014                DHILLON LAW GROUP INC.


By:   /s/ Krista L. Baughman
      Harmeet K. Dhillon
      Krista L. Baughman
      Attorneys for Plaintiff Beta Soft Systems, Inc.



8

Complaint                                                              Case No. 3:14-cv-5169